The undersigned have reviewed both Opinions and Awards filed by Deputy Commissioner Jan Pittman. The Full Commission AFFIRMS the Deputy Commission Opinion and Award in I.C. 371224 filed on September 22, 1995. However, in I.C. 163788 filed on November 2, 1992, the appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award in I.C. 163788 and enters the following Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. That at all relevant times in question, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. That the employee-employer relationship existed between plaintiff and defendant-employer.
3. That Aetna Insurance Company was the workers' compensation carrier on the risk for defendant-employer.
4. That plaintiff's average weekly wage on or about November 21 or 22, 1990 was $295.00.
5. Eight pages of medical records regarding treatment of plaintiff received into evidence following the hearing and a letter to counsel for plaintiff dated June 5, 1992 received into evidence after the hearing as Stipulated Exhibit #1.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is a forty-two-year-old married male with an eighth grade education who in November 1990 had been employed by defendant-employer for approximately seven years as a warehouse worker.
2. Plaintiff was born with a congenital spinal defect known as spondylolisthesis, a condition which is a permanent misalignment of vertebral segments of the spinal column in the lower back. Although he had experienced intermittent episodes of back pain likely attributable to his congenital condition throughout his life, plaintiff was nonetheless able to perform heavy labor as a warehouseman and at other manual labor jobs for many years without disabling symptoms. Plaintiff had not experienced symptoms of burning, sharp pain in his right hip and down his right leg to his knee prior to the alleged injury by accident on November 21 or 22, 1990.
3. At the time of his injury plaintiff had been employed by Green Seed Company for approximately seven years as a warehouseman. His principal duties were loading and unloading 50-60 pound bags of seed from tractor-trailer trucks onto pallets stacked in the warehouse, and operating a forklift. His work varied and he regularly made overtime, particularly during seasonal increases in shipping orders. On the 21st or 22nd of November, 1990, during the morning shift before lunch break, while unloading bags of seed from a truck onto pallets stacked in the warehouse, plaintiff began to experience pain in his back and right leg. He continued to work with pain that day and for several days thereafter. The pain worsened and his wife scheduled an appointment with his family doctor for November 27, 1990.
4. Plaintiff informed his co-worker Walter Willis that he had developed pain in his back during the morning shift after they had unloaded 200-300 bags of seed. Mr. Willis provided a written statement to that effect which was received into evidence and is attached as Exhibit 3. He also testified at the hearing in corroboration of his written statement.
5. On the day following his injury, plaintiff was in the warehouse when he had a conversation with his employer, Mr. Steve Fulton, at which time he advised Mr. Fulton that his back and leg were hurting and that he was going to make an appointment to see his doctor.
6. On November 27, 1990 plaintiff sought medical treatment for complaints of back pain and right leg pain from Dr. Darrell. This appointment was arranged by plaintiff's wife as plaintiff had health insurance with his wife's employer. Plaintiff informed defendant-employer on November 27, 1990 that he had to leave work early that afternoon in order to seek medical treatment for his complaints.
7. Following treatment for his complaints in November and December 1990, plaintiff's condition improved and he continued engaging his usual work duties for defendant-employer.
8. On April 29, 1991 he returned to Dr. Darrell for medical treatment relating a worsening in his condition since February 1991. Thereafter, he was referred for orthopaedic evaluation to Dr. Miller. X-rays performed during said evaluation revealed that plaintiff had a congenital defect diagnosed as first degree spondylolisthesis, L3-4, with bilateral pars interarticulars defect of L3 associated with moderate degenerative changes. Dr. Miller released plaintiff from work duties and referred him to Dr. Nelson who ultimately performed fusion surgery in June 1991 for correction of the spondylolisthesis at the L3-4 level. Dr. Nelson opined that the lifting of seed bags likely aggravated the pre-existing condition of spondylolisthesis producing the injury from which plaintiff suffers. Plaintiff has reached maximum medical improvement and has a thirty percent disability to his back which limits him to work not requiring lifting greater than fifty pounds. In light of this limitation, plaintiff was terminated from his position with defendant-employer in the warehouse as he was unable to perform his usual job for defendant-employer which involved lifting greater than fifty pounds.
9. The type of work engaged in by plaintiff during his employment with defendant-employer would tend to aggravate plaintiff's pre-existing spondylolisthesis. Plaintiff has proven that this condition was aggravated as a result of an accident or specific traumatic incident of the work assigned on or about November 21 or 22, 1990.
10. Although plaintiff suffers from a specific traumatic injury to his back this condition did not amount to the development of an occupational disease, which is due to causes and conditions characteristic of and peculiar to his employment with the defendant-employer. Therefore, plaintiff is not entitled to benefits pursuant to N.C.G.S. § 97-53(13).
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff did not develop an occupational disease which is due to causes and conditions characteristic of and peculiar to his employment with defendant-employer. Griffitts v.Thomasville., 65 N.C. App. 369, 309 S.E.2d 277 (1983), see also Furniture Co Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980). N.C.G.S. § 97-53(13).
2. Plaintiff did sustain a back injury as a result of a specific traumatic incident of the work assigned arising out of and in the course of his employment with defendant-employer on November 21 or 22, 1990. N.C.G.S. § 97-2(6).
3. As a result of plaintiff's specific traumatic injury, defendants shall pay plaintiff temporary total disability compensation in the amount of $295.00 per week from June 17, 1991 to March 23, 1992. N.C.G.S. § 97-29.
4. Plaintiff sustained a 30% permanent partial disability of his back. Defendants shall pay plaintiff $295.00 per week for 90 weeks as a result of his specific traumatic incident. N.C.G.S. § 97-31(23).
5. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as a result of his specific traumatic injury when bills for the same have been submitted to defendant and approved pursuant to procedures established by the Industrial Commission. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for an occupational disease is DENIED.
2. Plaintiff's claim for a back injury as a result of a specific traumatic incident is GRANTED.
3. As a result of plaintiff's specific traumatic injury, defendants shall pay plaintiff temporary total disability compensation in the amount of $295.00 per week from June 17, 1991 to March 23, 1992.
4. Plaintiff sustained a 30% permanent partial disability of his back. Defendants shall pay plaintiff $295.00 per week for 90 weeks as a result of his specific traumatic incident.
5. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as a result of his specific traumatic injury when bills for the same have been submitted to defendant and approved pursuant to procedures established by the Industrial Commission.
6. Defendants are entitled to receive a credit in the amount of $138.00 per week for 22 weeks. This amount reflects the payments made to plaintiff during the time he was injured.
7. A reasonable attorney's fee of 25% of the compensation awarded herein, is approved for counsel for plaintiff, the amounts having already accrued to be deducted from that amount owed to plaintiff and paid directly to counsel for plaintiff in one lump sum.
8. Defendants shall pay the costs.
FOR THE FULL COMMISSION
 S/ _____________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _____________________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ _____________________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 6/25/96